### HOUSING AUTHORITY OF CITY OF DALLAS v. BROWN et al.

#### No. 14615.

Court of Civil Appeals of Texas. Dallas.

March 13, 1953.

McKool & Bader, Dallas, for appellees.

·CRAMER, Justice.

This is a condemnation proceeding. Appellant Housing Authority sought the whole of appellees' property. The issues were tried to a jury who found the value of the real estate (house and lots) in question to be $3,750. The Housing Authority has appealed· from that judgment, assigning six points of error.

■ The first point asserts the damages found by the jury to be excessive; countered that the amount found by the jury was based on substantial evidence of probative value. The point necessitates a review of the evidence. The property in question consisted of two lots, each 55 x 217 ft., with a six-room house thereon, at the intersection of Vacek and Pointer Road in Dallas County. Six expert witnesses testified as to value,—three for appellees as follows: $6,100, $6,125, and $5,368.75; three for appellant, $2,675, $2,550, and $2,200. Two witnesses testified as to the value of the lots only, appellees' witness testifying the value was $2,000; appellant's witness, $875. The jury's verdict, when considering the above, as well as the evidence as a whole, was not so against the great weight of the evidence as to justify this Court in either reversing the case or ordering a remittitur.

Point 1 is overruled.

■ Point 2 asserts error in the allowance of interest from August 10, 1951, date of the Commissioners' award. Interest should have been allowed on the increased amount of the award by the trial court, to begin on the date condemnor took possession of the property. Point 2 is therefore sustained, and the amount of interest allowed should be reformed so as to conform to the above holding. See Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963.

Point 3 complains of the court's failure to strike evidence introduced by appellee wherein she testified that the lots and the house involved here cost $3,500. Appellees move to strike this point, as well as points 4, 5, and 6, asserting they were not properly

Scurry, Scurry & Pace and E. B. Stroud, Dallas, for appellant.

raised in motion for new trial and therefore not before this Court. The record shows without dispute that the trial term of the case in the court below began February 4, 1952 and ended April 5, 1952. The court's charge in this case was filed February 26, 1952; judgment was signed and entered March 5, 1952; appellant's original motion for new trial was filed March 6 and did not contain assignments covering the errors complained of in points 3, 4, 5, and 6. The amended motion for new trial was filed April 5, 1952 without leave of court. The order overruling motion. for new trial (omitting formal parts) recites:

"On this the 5th day of April 1952, at 11:45 A.M. the last day of the February-March term of this Court, came on to be heard the plaintiff's motion for a new trial filed in this Court on March 6, 1952, and no request ever having been made to the Court either by the plaintiff or defendant for a formal hearing of this matter, and the Court by reason of it being the last day and the last hour of its term of Court does hereby upon its own initiative and for the record overrule the plaintiff's original motion for a new trial filed March 6, 1952, and the Housing Authority of the City of Dallas, plaintiff, having indicated that they desired to appeal the matter previous hereto does for the record make note that they duly excepted to the Court's ruling and gave notice of appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas sitting in Dallas.

"For the record in this cause let it further be shown that on April 5, 1952 at 10:40 A.M., while the Judge was in attendance at a Bar Association meeting an amended motion for a new trial was filed by the plaintiff's attorney at 10:40 A.M., with an order overruling the same for the Court to sign and word left with the clerk of this Court that no formal hearing was requested and that the court merely overrule the plaintiff's amended motion for a new trial and the plaintiff Housing Authority gave notice of appeal.

"The Court considers the amended motion for a new trial filed too late for any action upon the part of this court and it is unwilling to arbitrarily overrule the alleged grounds, 15 grounds set forth therein without a hearing upon the matter and without having any independent recollection of the various evidentiary matters alleged by the plaintiff to have occurred. The court communicated with the defendant's attorney Mike McKool and was informed that it would be impossible for him to appear in Court without any notice having been given him of the plaintiff's amended motion for a new trial or the setting at this late date within an hour and a half of the adjournment of this Court for the term of this Court for a hearing on plaintiff's amended motion for a new trial and therefore the Court considers said plaintiff's motion for a new trial as not filed within time and in accordance with the rules of procedure and hence does not consider or act upon the same for any purpose in view of the fact that this trial was had upon February 27, 1952, and the plaintiff's motion for a new trial was filed on March 6, 1952, and no setting requested at any time, which the Court would gladly have given and the amended motion for a new trial filed by the plaintiff on April 5, 1952 is considered to be tardily filed and although the file stamp is marked thereon the Court in its discretion feels that the same is filed too late to be acted upon and orders and directs that the same not be considered as duly filed in accordance with law, nor acted upon in any manner by this Court.

"Signed and entered at Dallas, Texas, this the 5th day of April, 1952, at 12:00 O'Clock, Noon. . /s/ Glenn Polk, Judge."

■ Rule 320, Texas Rules of Civil Procedure, provides in substance that the motion must be filed within two days after the rendition of the judgment and may be amended under leave of the court and be determined at the term of the court at which it is made. The question here has not been directly passed upon under the above Rule. However in W. C. Turnbow Petroleum Co. v. Fulton, 145 Tex. 56, 194 S.W.2d 256, our Supreme Court held that where the motion and amended motion were each timely filed and the trial court timely acted thereon and overruled the motions, the effect of the order was to determine that the movant

was entitled to file the amended motion. In Combined American Ins. Co. v. Morgan, Tex.Civ.App., 214 S.W.2d 145, 149, the El Paso Court of Civil Appeals held that "Error may not be assigned on an amended motion for a new trial upon which the trial court has never ruled unless it appears that leave to file same was granted by the trial court. * * *" Under the state of the authorities, leave not having been granted under Rule 320, we must look to appellant's assertion that the refusal to grant such leave was an abuse of discretion. The record contains an affidavit of the Court Reporter (omitting formal parts) as follows:

██ "I am Valerie Lacey, the Court Reporter in County Court at Law No. Two. I was the Court Reporter and took down the Statement of Facts in the case of The Housing Authority of the City of Dallas, Texas v. Mary E. Brown, No. 95696. The Statement of Facts in this case was ordered by Mr. Stroud, Attorney for the Housing Authority, immediately after the trial was over, but due to my very pressing work load I was unable to furnish Mr. Stroud, Counsel for the Housing Authority, with a complete Statement of Facts immediately. I did furnish Mr. Stroud with an abbreviated Statement of the Facts in this case which contained only the Objections and Exceptions made during the trial of this cause. I furnished Mr. Stroud with this abridged Statement of Facts which contained the Objections, on Friday, April 4, 1952."

In view of that affidavit, we are of the opinion that the trial court probably abused his discretion in not considering the amended motion, if the points have merit. We will therefore examine the points to determine the question of merit.

██ Point 3 asserts error in refusing to strike the testimony of appellee as to the cost of the property based upon appellant's motion made after the evidence on cross-examination disclosed that she did not actually know the cost, of her own personal knowledge. She did testify that the lots and house cost $3,500; that the cement foundation cost $250; that the previous year the house had been painted and pa-

pered inside and painted outside at a cost of $400; she paid the builder from time to time because she didn't have the cash to pay him all at one time. On cross-examination she testified the lots cost in excess of $400; that a carpenter named West built the house for her; her father paid him and she did not know how much he paid the carpenter every time; she didn't know exactly how much her father paid; she gave her father money and heard him say it cost $3,500; she could not say of her own knowledge what her father paid the builder; that it had cost her around $3,000 for the house; that her father did not add up all the cost, because he died; she knew how much she made and she practically spent it all; she knew how much she spent; her part was $2,000 and her father spent some of his money on it. He spent $1,000 on it. The builder was colored and his name was West; she thought his initial was L.; she gave her father practically all she made; she made $69.50 per week, besides the $800 she had in the bank.

Considering the nature of this case, the objection went to the weight rather than to its admissibility, and in considering the record as a whole we find the error, if any, was harmless. Under such record, point 3, if considered, would have been overruled.

██ Point 4 complains of the court's refusal to allow the property owner to testify as to what value the property was rendered for taxes. The court sustained an objection to such question. There is no evidence in this record to show that Mary herself assessed this property for taxes. It is generally known that values reflected by the tax rolls do not reflect actual value. Custom usually sets the approximate percentage of actual value for such assessment. Under all circumstances the error, if any, was harmless.

Point 4 therefore, if it had been considered, would have been overruled.

██ Point 5 complains of the court's refusal to permit the expert witness Miller to testify concerning the sale price of a comparable house and lot he used in arriving at the market value here. The evidence shows the witness Miller, an ex-

perienced real estate expert, qualified without doubt as to values, was asked the question as above indicated, and that the court sustained the objection thereto, stating: "Of course, the witness is an expert; he has expert testimony and can testify to matters within his own knowledge, building costs, but you are trying to hook this into comparable sales, are trying to make this look like a comparable sale. I am not going to let that in."

Assuming the trial court erred in excluding the evidence, we are of the opinion that such error would not have been reversible. There are numerous pictures of the house in evidence. The jury knew the location of the property; the general class of houses in the neighborhood in which it was located; knew it was in a low-cost colored community; most of the houses were built, at least in part, by the occupants, as homes. The value of such a house is not one on which real estate men might ordinarily agree.

Reasonable cash market value is influenced by a number of considerations, some of which are the scarcity or abundance of such property on the market. It is what a purchaser at the particular time, who desired to purchase but did not have to purchase, would pay for it, and what a seller, who desired to sell, but did not have to sell, would take for the property. Such value is influenced by numerous other elements than the original cost. The amount found by the jury was in reasonable range, considering all the expert testimony.

The error, if any, was harmless. Therefore, point 5, if considered, would have been overruled.

Point 6 asserts error in not permitting the witness Schwartz to testify as to a sale of a comparable house. The same question is discussed under point 5 above, and the same reasoning applies here. The error was harmless.

Finding no reversible error in the record upon which the cause should be remanded for another trial, the judgment below will be reformed as to the interest recovery, and as so reformed will be and is affirmed.