NO. 07-06-0349-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 28, 2006


 ______________________________



ALEX MARTINEZ FLORES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-409,540; HONORABLE BRADLEY UNDERWOOD, JUDGE


_______________________________




Before REAVIS and CAMPBELL and HANCOCK, JJ.

ON ABATEMENT AND REMAND


 Appellant Alex Martinez Flores appeals his conviction for the offense of possession
of a controlled substance in an amount more than four grams but less than 200 grams and
his punishment of 30 years confinement in the Institutional Division of the Texas
Department of Criminal Justice.

 Appellant has failed to file an adequate docketing statement as required under Rule
32.2 of the Texas Rules of Appellate Procedure. Instead, appellant has notified this court
of his intention to seek a court appointed attorney. However, the trial court clerk's office
has no record of appellant's request for a court appointed attorney as of September 15,
2006.

 We now abate this cause and remand it to the 364th District Court of Lubbock
County. It is ordered that the judge of said court convene a hearing, after due notice to all
parties, to determine: 

 1) whether appellant desires to prosecute this appeal; 

 2) whether appellant has retained counsel; or 


 if appellant is not represented by retained counsel, whether appellant
is indigent and, therefore, is entitled to appointed counsel and a
record of the trial court proceedings free of charge.


 We further direct the trial court to issue findings of fact and conclusions of law
addressing the foregoing subjects. Should the trial court find that appellant desires to
pursue his appeal, is not represented by counsel and is indigent, we then further direct the
court to 1) appoint counsel to assist in the prosecution of the appeal, and 2) issue an order
requiring the preparation of a clerk's record in accordance with Rule 34.5 of the Texas
Rules of Appellate Procedure. The name, address, phone number, fax number, and state
bar number of any counsel who is appointed to represent appellant on appeal must also
be included in the court's findings of fact and conclusions of law. Furthermore, the trial
court shall also cause to be developed 1) a supplemental clerk's record containing the
findings of fact and conclusions of law and all orders of the trial court issued as a result of
its hearing on this matter and 2) a reporter's record transcribing the evidence and
arguments presented at the aforementioned hearing. Additionally, the trial court shall
cause the supplemental clerk's record to be filed with the clerk of this court on or before
November 3, 2006. Should additional time be needed to perform these tasks, the trial
court may request same on or before November 3, 2006.

 It is so ordered.

 

 Per Curiam







Do not publish. 



mp; J) even though J & J was not a party
to the divorce proceeding. We overrule the point.

 The property in question (various tracts totaling 40 acres) was transferred by an
entity known as Riata to John and Alta. At the time of the transfer, Riata owed J & J for
work that J & J had performed for it. And, to satisfy the outstanding debt due J & J, Riata
transferred the realty to Alta and John, the latter being a director and the president of the
corporation. Thereafter, John's son, James, intervened in the divorce proceeding. He did
so alleging that he, like his father, was a shareholder of J & J and that John had "engaged
in fraudulent or dishonest conduct . . . in that he breached his fiduciary duty to the
Corporation by using corporate funds to acquire property in his personal name" and that
"he has failed to reveal to other directors and officers pertinent facts adverse to corporate
interests . . . ." Thereafter, he prayed for damages, the removal of John as a director of
J & J, interest, costs, attorney's fees, and "such other relief which the Intervenor may be
entitled." Though John answered the petition, he did so by general denial. No special
exceptions were included in the pleading.

 James' petition can be reasonably interpreted as being in the nature of a
shareholder's derivative suit. That is, he, as a shareholder of J & J, initiated suit on behalf
of the corporation to recover upon claims of the corporation against its president. And,
though the petition may have omitted various pleading requirements mandated by statute,
see Edlund v. Bounds, 842 S.W.2d 719, 728-29 (Tex. App.-Dallas 1992, no writ) (holding
that the shareholder must allege in his pleading that he made demand upon the corporate
officers to prosecute the action and they refused or explain why no such demand was
made), no one specially excepted to their absence. Thus, they were waived.

 Similarly waived was any complaint about James failing to join J & J as a party to
the suit. While the corporation was a necessary or indispensable party to the proceeding,
see DeBoard v. Cicle Y Of Yoakum, Inc., 951 S.W.2d 127, 134 (Tex. App.-Corpus Christi
1997), rev'd on other grounds, 967 S.W.2d 352 (Tex. 1998) (holding it an indispensable
party to a shareholders derivative suit); Providential Inv. Corp v. Dibrell, 320 S.W.2d 415,
418 (Tex. Civ. App.-Houston 1959, no writ) (holding it a necessary party to such a suit),
no one objected to its absence below. Thus, the defect was waived. See Puryear v. Red
River Authority, 383 S.W.2d 818, 821 (Tex. Civ. App.-Amarillo 1964, writ ref'd n.r.e.)
(holding that in the absence of a plea of non-joinder of necessary parties, the appellate
court was not authorized to reverse the trial court's judgment because of the lack of a
necessary party); Cox v. Johnson, 638 S.W.2d 867, 68 (Tex. 1982) (holding that the failure
to join an indispensable party generally is not fundamental error because seldom will the
absence of an indispensable party deprive the trial court of jurisdiction to adjudicate
between the parties already joined).

 Finally, a reading of the record discloses ample evidence upon which the factfinder
could have reasonably decided that the realty actually belonged to J & J. Again, Riata
owed the corporation a debt. Thus, the receivable belonged to J & J, not John, its
president and a shareholder. Moreover, the conveyance occurred in satisfaction of the
debt owed to J & J, according to John's own testimony. It is well settled that when one
party pays the purchase price of realty (that price being satisfaction of the debt due J & J
at bar) but title is placed in the name of another, a purchase money resulting trust will arise
in favor of the entity providing the purchase money. Nolana Dev. Ass'n v. Corsi, 682
S.W.2d 246, 250 (Tex. 1984). There existing evidence illustrating that such a trust arose
here, the trial court did not err in vesting J & J with title to the land. 

Issue Three -- Sale of Horses Below Fair Market Value


 Next, John attacks the legal and factual sufficiency of the evidence underlying the
trial court's finding number VIII. In the latter, the trial court stated that on

 December 7, 1999, [it] ordered the eleven horses belonging to the parties to
be sold and the proceeds paid into the registry of the Court. John . . .,
without consulting [Alta], sold the horses at a private sale for $3,100, an
amount below their fair market value, with intent to reacquire said horses
after the divorce was final. 


However, John neither argues nor attempts to illustrate the effect, if any, that the court's
finding had upon the judgment ultimately rendered. This is of import since the burden lay
with him to establish on appeal that the purported error caused the rendition of an
improper judgment. In re M.S., No. 02-0509, 2003 WL 21512654 (Tex. July 3, 2003);
Crescendo Inv., Inc. v. Brice, 61 S.W.3d 465, 477 (Tex. App.-San Antonio 2001, pet.
denied). Consequently, we may not reverse the judgment of the trial court (assuming that
the error of which he complains was indeed error). See Tex. R. App. P. 44.1(a) (stating
that no judgment may be reversed on appeal on the ground that the trial court made an
error of law unless the court of appeals concludes that the error complained of probably
caused the rendition of an improper judgment or probably prevented the appellant from
properly presenting the case to the court of appeals); Goode v. Shoukfeh, 915 S.W.2d
666, 673 (Tex. App.-Amarillo 1996), affirmed, 943 S.W.2d 441 (Tex. 1997) (overruling the
point of error since the appellant did not claim or attempt to show that he was harmed by
the purported error). 

Issue Four - Valuation and Division of Property


 Through his last issue, John attacks the trial court's distribution of the marital estate. 
He does so by first contending that the trial court erred in valuing two separate tracts of
land. Then, he questions the sufficiency of the evidence underlying the trial court's finding
that the personalty awarded to each litigant was substantially equal. We sustain the issue.

 Statute obligates the trial court to divide the marital estate, upon the divorce of the
parties, "in a manner that the court deems just and right, having due regard for the rights
of each party and any children of the marriage." Tex. Fam. Code Ann. §7.001 (Vernon
1998). This provision does not obligate the court to divide the property equally. Tate v.
Tate, 55 S.W.3d 1, 10 (Tex. App.-El Paso 2000, no pet.). Indeed, it has long been held
that trial courts have great discretion in determining how to divide the estate, and we
cannot interfere with that decision unless and until it is shown that its discretion was
abused. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). With this said, we turn to the
contentions before us. 

 As to the valuation of the two tracts of land, the first parcel consists of five acres
located in Hutchinson County. On it sits a three bedroom 1700 square foot house in
average condition, a detached two car garage, another detached garage, three storage
buildings, a metal shop, two horse stables with a pipe fence corral, one water well, a
windmill, several chicken coops, and other improvements. The trial court valued the
property at $35,610. This was the very same value placed upon it by Alta in her verified
inventory and appraisement, which document was received into evidence. See Vannerson
v. Vannerson, 857 S.W.2d 659, 671 (Tex. App.-Houston [1st Dist.] 1993, no writ) (holding
that the trial court could rely upon the contents of a sworn inventory when arriving at its
conclusions of law); Bailey County Appraisal Dist. v. Smallwood, 848 S.W.2d 822, 824
(Tex. App.-Amarillo 1993, no writ) (stating that an owner is qualified to testify about the
market value of his property). Furthermore, she represents (through her brief and verified
inventory and appraisement) that the $35,610 figure was the valuation assigned to the
parcel by the Hutchinson County Appraisal District in 1997 (three years prior to trial). 
Thus, some evidence appears of record supporting the trial court's valuation of the
property. 

 Yet, also of record is other evidence concerning the value of the tract. For instance,
Alta tendered an appraisal wherein the appraiser opined that the realty had a market value
of $80,000. He based his opinion upon comparable sales in the area. Next, a local real
estate agent represented that based on his inspection of the home and improvements, "we
could list [the] home for sale at an asking price of $125,000 and could probably get an
offer somewhere in that price range." Additionally, John valued the parcel from $125,000
to $150,000. As can be seen, this other evidence, including that of Alta's own appraiser,
valued the parcel at a sum far greater than that assigned by the local appraisal district
three years before trial. More importantly, authority has long recognized that "values
reflected by the tax rolls do not reflect actual value." Housing Authority v. Brown, 256
S.W.2d 656, 659 (Tex. Civ. App.-Dallas 1953, no writ). Given Brown, Alta's apparent
reliance on the local tax rolls when valuing the tract in her inventory and appraisement, the
trial court's obvious reliance on Alta's opinion, and the other evidence illustrating a value
at least twice as much as the dated valuation assigned the land by local tax rolls, we
conclude that the valuation placed on the land by the trial court is so against the great
weight and preponderance of the evidence as to make the valuation clearly wrong or
manifestly unjust. 

 In short, the evidence underlying the valuation is factually insufficient. Therefore,
the finding is erroneous. So too is it harmful. For instance, in addition to awarding the
tract to Alta, the trial court also entered a $12,000 judgment against John and in favor of
Alta "[f]or the purpose of a just and right division of property." Obviously, revaluation of
the five acre parcel would materially affect the sum, if any, John is obligated to pay Alta
to gain a just and right division of their estate. So, the error probably caused the rendition
of an improper judgment. Tex. R. App. P. 44.1(a)(1). And, because it did, we must remand
the entire community estate for a new division. Jacobs v. Jacobs, 687 S.W.2d 731, 732
(Tex. 1985) (holding that where error in part of the division of the marital estate materially
affects the trial court's just and right division of the entire estate, the reviewing court must
remand the entire community estate for a new division); In re Taylor, 992 S.W.2d 616, 621
(Tex. App.-Texarkana 1999, no pet.) (holding the same). 

 Having sustained that portion of issue four involving valuation of the five acre tract,
we need not consider the other aspects of the issue. Accordingly, we reverse that part of
the trial court's judgment that divides the community estate of John and Alta Scott and
remand the cause for further proceedings. In all other aspects, the judgment of the trial
court is affirmed.


 Per Curiam


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2003).